UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
IN THE MATTER OF THE APPLICATION OF

**NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,**

                              Petitioner,

-against-

**DUFOUR GROUP INC.,**
                              **Respondent.**

Index. No: 12 Civ 00173 (AJN)

ATTORNEY AFFIRMATION IN SUPPORT OF RESPONDENT'S OPPOSITION

ANTONY HILTON, ESQ, an attorney with the Law Offices of Joseph J. Mainiero, and duly licensed to practice law in the Courts of the State of New York, affirms the following under the penalties of perjury:

1. I am was the attorney for the Respondent, Dufour Group, Inc., during the arbitration proceedings and submit this affirmation at the request of our client in support of its opposition to Petitioner's application to enforce the arbitration award.

2. I present this Affirmation as to certain noteworthy events, actions and statements made during the arbitration proceeding which is the subject of the above captioned matter. As there was no official recording of the proceedings themselves, this affirmation serves to now recount those events which occurred several months earlier.

3. As a general overview of the proceedings, I found the conduct of the Arbitrator to be capricious and, at times, sarcastic. It seemed very apparent to me at the time that the Arbitrator had prejudged this matter, and had a general disregard for any position made by Respondent.

4. During the proceedings, three parties testified, the two primary grievants, Peralta and Frederick, as well as one witness. Grievant Frederick was the first to give testimony in this

matter. His testimony represented that he had arrived at the subject job site to report for his duties, and was granted entrance to the site at approximately 7am.[1] Thereafter, Frederick testified that he was instructed by an individual named "Jack" to begin work in an area Frederick determined to be an unsafe environment. Frederick's testimony then continued to describe the abusive nature and language of Jack. However, on cross examination, it was determined that Frederick did not have knowledge that Jack was not a representative of Respondent, but of the primary contractor, Glenman. It was also made clear on cross examination that the Respondent's representative, "Tom", did not engage in any abusive language.

     5.     With regard to Tom, Frederick represented that he had approached Tom and informed him that the condition of the construction area he was expected work that day was unsafe. Frederick stated on direct testimony that Tom had uttered something, but that the utterance was unintelligible. He further stated that a later encounter with Tom occurred when Tom approached him with a handwritten, green check and informed him that his employment was terminated for talking too much about safety. At this point, Frederick had already contradicted his Grievance, which represented that Tom had also been abusive to him.

     6.     On cross examination, Frederick testified again that he could not understand anything that Tom had said, and that no cussing or abusive language had come from Tom. Further, upon confirming in his cross testimony that the check he received and cashed was green and handwritten by hand, Respondent's counsel made a demand that this check be produced. At this time, the Arbitrator began advocating for Frederick stating that he was unlikely to have such a copy of the check since he had cashed it. I explained to the Arbitrator that all banks keep

---

[1] This particular testimony, which I confirmed with Frederick, contradicts the testimony and claims made by the witness in a prior arbitration action brought by him on the same grounds.

photocopies of the checks they receive, and demanded again that it be produced.  The Arbitrator reserved decision on the check for when Respondent put on his defense.

      7.      After my cross was completed, the Petitioner's attorney engaged in some re-direct examination.  Petitioner's counsel inquired as to inaudible utterances of Tom that Frederick witnessed.  In questioning him, Petitioner's attorney inquired as to whether Tom had many any motions and pantomimed Tom's movements, expressing to Frederick the answer.  The Arbitrator overruled an objection on the grounds of leading.  The Petitioner's attorney also inquired as to where Frederick had cashed his check, asking if he had cashed it at a local check-cashing storefront (or "place").  This was plainly leading the grievant as well, but the Arbitrator overruled this objection as well.  Of course, Frederick, faced with circumstances where he might have to produce this check, concurred with his attorney's suggestion that he had cashed the check at a local check-cashing storefront.

      8.      When Grievant Peralta gave his testimony, he, too, contradicted his own grievance.  While Peralta claimed in his Grievance that verbal abuse had come from all supervisors present at the construction site, his direct testimony established that the abuse had come only from the Glenman representative, Jack – who Peralta acknowledged in his grievance and cross testimony to be a Glenman representative, not an agent of Respondent.  On cross examination, this was confirmed.  Moreover, Peralta fails to set out the grounds for his termination in his Grievance, however, having been permitted to commiserate with Frederick before and during the hearing, his testimony filled in this gap of his Grievance.

      9.      Referring back to the check described by Frederick, the direct testimony given by Frederick regarding the check was entirely new information never before available to Respondent or its counsel.  Until that appearance, the information provided by Petitioner was

limited to documentation concerning the work itself, the contract, and the grievances. No information about the check was apparent, or as to its form. As such, Frederick's testimony concerning that check became an issue as it contradicted what was known by Respondent to be common business practice for the issuance of employment compensation. Since the Arbitrator "reserved" his right to make a finding on Respondent's demand to Petitioner to produce this check, Respondent conducted his own investigation. In so doing, the check described by Frederick (the only check Frederick testified that he received) was discovered in Respondent's bank records. Furthermore, the check form was not green, nor handwritten. It was a standard pre-printed, white check normally issued by the Respondent, and it indicated on the rear that the check was not cashed by Frederick, but was endorsed over to a third party, a Greta Salsbury. On further investigation, it was discovered that a Greta Salsbury owned the property at which Frederick lived at the time (based upon the home address provided on the check). As such, Respondent reasonably deduced that the check had not been cashed at a check-cashing storefront, as testified by Frederick, but that Frederick had in fact used the check to pay his rent.

      10.    With this newly discovered evidence, Respondent attempted to recall Frederick to question him on his prior testimony and the new found documentation. However, the Arbitrator, on Petitioner counsel's objection, prevented Respondent from questioning Frederick on these documents. Petitioner's counsel represented that Respondent could not introduce new evidence he did not previously provide in discovery, and that it was improper to re-question Frederick on this new evidence. The Arbitrator took the evidence into the record, but ruled that Respondent could not question Frederick again. Then the Arbitrator permitted Petitioner's counsel to briefly "re-direct" Frederick on the new documentation, wherein the Petitioner's counsel asked

Frederick if he knew for certain that Greta Salsbury was the owner of Frederick's former residence. Frederick obviously said "no".

      11.     As the proceedings progressed, Petitioner called one witness. A person named McKowski. This person was a grievant in a previous arbitration, in which he asserted the same claims on the same set of circumstances. After Mr. McKowski's testimony was take, he was dismissed. However, on his way out of the hearing room, he requested the right to make a statement. Respondent's attorney protested, but McKowski spoke anyway. The Arbitrator made no effort to stop McKowski from speaking and casting an accusation at Respondent. After McKowski made his statement, while Petitioner's counsel exited with McKowski to determine if there were any further witnesses he wished to call, the Arbitrator inquired to Respondent's attorney, as to whether they statement was true. Respondent's counsel further protested that McKowski was permitted to speak at all after his dismissal, but the Arbitrator simply admonished "you don't tell me how to do my job" and said, upon further protestation from Respondent's counsel, "don't communicate with me while counsel isn't in the room".

      12.     At the final appearance, before Respondent began to put on his defense, I made a motion to dismiss. However, before I could even express the grounds, he denied them without any hesitation. I inquired as to whether the Arbitrator had any interest in the grounds, to which he responded: "Do you expect the decision to be any different?" I immediately inquired as to whether the Arbitrator was being sarcastic, and he inquired as to whether my motion was sarcastic. I reiterated my intent to move for dismissal based on grounds I wanted to present. Leaning over toward me, with a blank expression he instructed me to make my argument. I then proceeded to discuss the contract, its terms and the law of this State as it pertains to contracts. Once I had finished my argument, he inquired glibly "Are you finished?" When I confirmed that

I was, he turned to Petitioner's counsel and asked him if he had any response.  Once Petitioner's counsel made his argument, the Arbitrator denied the motion immediately.  The entire occurrence seemed perfunctory, wherein the Arbitrator engaged in the activity to only create the "appearance" of a "fair" proceeding.

   13. After Respondent rested his defense, I told the arbitrator that I had several objections.  The Arbitrator refused to permit me to state them orally and instructed me to submit them in writing.  I did so, and Petitioner was given an exorbitant amount of time to respond.

Dated: New York, New York
   February 14, 2012

                  Respectfully submitted,

                  **Law Offices of Joseph J. Mainiero**

                  _____
                  Antony Hilton, Esq.
                  Law Offices of Joseph J. Mainiero
                  305 Broadway, Ste. 402
                  New York, NY 10007
                  212.267.6611
                  thilton@jjmlegal.com