UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
IN THE MATTER OF THE APPLICATION OF

**NEW YORK CITY DISTRICT COUNCIL OF**                    **Index. No: 12 Civ 00173 (AJN)**
**CARPENTERS,**

**Petitioner,**

-against-

**DUFOUR GROUP INC.,**

**Respondent.**

**RESPONDENTS AMENDED MEMORANDUM OF LAW IN OPPOSITION OF
PETITION TO CONFIRM ARBITRATION AWARD**

## TABLE OF CONTENTS

                                                                                      **Pgs.**

**PRELIMINARY STATEMENT**                                                              **1**

**STATEMENT OF FACTS**                                                                 **1**

**ARGUMENTS**                                                                          **2**

    **I.**  **THE ARBITRATOR SHOWED MANIFEST DISREGARD FOR THE LAW**          **2**

      i.  *Petitioner failed to properly assert the rights under the contract.*          4

      ii. *The meaning of "good cause" was clearly defined in the contract, and did not limit Respondent's right to determinate for any cause short of discrimination.*          5

  **II.** **THE ARBITRATOR REFUSED TO HEAR AND IGNORED EVIDENCE PERTINENT AND MATERIAL TO THE CONTROVERSY**          **7**

  **II.** **ARBITRATOR ERRED IN CONSIDERING INCONSISTENT TESTIMONY.**          **11**

  **III.** **PARTIALITY WAS EVIDENT IN THE ARBITRATOR'S CONDUCT**          **13**

**CONCLUSION**                                                                         **15**

## TABLE OF AUTHORITIES

**Case Law**                                                                    **Pgs.**

*Frame v. Maynard*, 2011 NY Slip Op 03335, 922 N.Y.S.2d 48 [1st Dept 4-28-2011]………  6

*Frame v. Maynard*, 2011 NY Slip Op 03335, 922 N.Y.S.2d 48 [1st Dept 4-28-2011]……….  6

*Golden v. Worldviosion Enters.*, 133 A.D.2d 50, 51 [1987], *lv denied* 71 N.Y.2d 804 [1988]..  4

*Goldman v. Architectural Iron Co.,* 306 F.3d 1214, 1216 [2d Cir.2002]………………………  3

*People v. Schwartzman*, 24 N.Y.2d 241, 245, 247 N.E.2d 642, 644-45 [1969]……………….  10

*People v. Tempur-Pedic Intl., Inc.*, 30 Misc.3d 986 [2011]……………………………………  6

*Rai v. Barclays Capital Inc.*, 739 F. Supp. 2d 364, 372 [S.D.N.Y. 2010]………………...  7, 10

*Sabetay v. Sterling Drug, Inc.*, 69 N.Y. 2d 329, 514 N.Y.S. 2d 209 [1987]……………………  3

*Slatt v. Slatt*, 64 N.Y.2d 966, 967, 477 N.E.2d 1099, 1100, 488 N.Y.S.2d 645, 646 [1985]…..  5

*Speiden v. Innis, Speiden & Co., Inc.*, 216 App. Div. 408 [1926]………………………………  4

*Treiger v. Montefiore Medical Center*, 15 A.D.3d 175 [1ˢᵗ Dept 2005]………………………..  4

*Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004 …………………………………………  3

**Statutes**

9 U.S.C. § 10………………………………………………………………………………  1

9 U.S.C. §10(a)(3)…………………………………………………………………………  7

9 U.S.C § 10(2)……………………………………………………………………………  13

N.Y. C.P.L.R. § 7511(b)(1)(ii)……………………………………………………………  13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
IN THE MATTER OF THE APPLICATION OF

| | |
|---|---|
| **NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,** | Index. No: 12 Civ 00173 (AJN) |
| **Petitioner,** | **RESPONDENTS MEMORANDUM OF LAW IN OPPOSITION OF PETITION TO CONFIRM ARBITRATION AWARD** |
| -against- | |
| **DUFOUR GROUP INC.,** | |
| **Respondent.** | |

## PRELIMINARY STATEMENT

Respondent submits this memorandum of law in opposition to Petitioner's application to enforce the Arbitration Awards (Exh. "A") granted upon Petitioner's Grievances (Exh. "B"), and requests they be vacated. Pursuant to 9 U.S.C. § 10, an order vacating the arbitration awards is appropriate based upon the Arbitrator's misconduct, *to wit*: (1) the Arbitrator showed a manifest disregard of New York State law; (2) the Arbitrator ignored evidence pertinent and material to Dufour's case and the testimony of the grievants; (3) the Arbitrator refused testimony regarding evidence which challenged the veracity of the grievants' testimony; and (4) the Arbitrator engaged in misbehavior prejudicing the rights of the Respondent, Dufour Group, Inc. Accordingly, Dufour respectfully petitions this Court to vacate the Arbitration award.

## STATEMENT OF FACTS

On or about August of 2008, Respondent entered into a collective bargaining agreement ("Agreement") with the District Counsel of New York City and Vicinity, United Brotherhood of Carpenters and Joiners of America ("Union"). Subsequent to the execution of this Agreement, Respondent employed several members of the Union for a construction job. On the first day of Respondent's performance of this job, he terminated the employment of several Union members.

1

After termination of the Union members, on or about July of 2009 and January 2011, said members had brought grievance actions for arbitration against Respondent pursuant to Article XII of the agreement, which provided that any grievance must be addressed in arbitration.  The basis for the grievance was founded upon Article VI, section 4, of the Agreement, which provides that "[t]he Employer shall retain the right to discharge any Carpenter referred by the Union for good cause reasons."  The claims asserted were that Respondent's decision to terminate the Union members was not for "good cause reasons" because, as Grievants claimed, they were fired for refusing to work in unsafe conditions, and discussing the safety issues.

After a full proceeding, the Arbitrator granted an award to the Union on October 11, 2011.  Thereafter, on November 2, 2011, the Union requested a supplemental award for other listed grievants as the first award only addressed the two testifying grievants, Carlos Peralta and Wycliffe Frederick.  Said award was granted on December 3, 2011, wherein the Arbitrator re-declared the award to Peralta and Frederick and granted further award to other grievants.

**ARGUMENTS**

Several objections were made during the arbitration proceedings, reiterated in written form and submitted to the Arbitrator in this matter (Exh. "C").  The Arbitrator's decision to overrule these objections represent the misconduct of the Arbitrator to ignore the State law and disregard evidentiary proof which challenged the veracity of the grievance as well as to testimony of the grievants.

I. <u>**THE ARBITRATOR SHOWED MANIFEST DISREGARD FOR THE LAW**</u>

The Second Circuit has long held that "[a]n arbitration award may be vacated if it

exhibits 'a manifest disregard of the law." (*Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)

(quoting *Goldman v. Architectural Iron Co.,* 306 F.3d 1214, 1216 [2d Cir.2002]).  "An arbitral

award may be vacated for manifest disregard of the law "only if 'a reviewing court ... find[s]

both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored

it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly

applicable to the case." (*Id*).  Furthermore, "a court reviewing an arbitral award cannot presume

that the arbitrator is capable of understanding and applying legal principles with the

sophistication of a highly skilled attorney.  Indeed, this is so far from being the case that an

arbitrator "under the test of manifest disregard is ordinarily assumed to be a blank slate unless

educated in the law by the parties." (*Id.* at 190).

  During proceedings, Respondent motioned the court for dismissal of the matter based on

that the contract relied upon by Petitioner.  Specifically, Respondent argued that Petitioner failed

to properly claim the rights under the contract, and that the terms of the contract did not limit

Respondent's right terminate the grievants' employment as at-will employees for any reason

other than moral discrimination.  Generally, "[i]t is still settled law in New York that absent an

agreement establishing a fixed duration, an employment relationship is presumed to be a hiring

at-will, terminable at any time by either party." (Sabetay v. Sterling Drug, Inc., 69 N.Y. 2d 329,

514 N.Y.S. 2d 209 [1987]).  There was nothing in the agreement between the parties establishing

a duration, however, the Petitioner relied upon one sentence of the contract as establishing a

limitation regarding Respondent's right to terminate the employment of the grievants – Article

VI, section 4, which states that the Respondent retains the right to terminate employment of a

union member for "good cause reasons".  As will be demonstrated herein, that contractual

limitation was itself limited in its application under the terms of the agreement.

       *i.   Petitioner failed to properly assert the rights under the contract.*

As a threshold matter, the motion to dismiss the proceedings was based in part upon Petitioner's incorrect application of the terms of the contract.  The Petitioner's application to seek remedy was based upon the assertion that Respondent was barred by the union contract (Exh. "D") from terminating the grievants' employment for ay reason other than "just cause" (Exh. "B", "unjust layoff").  However, as argued orally, and in the written objections (Exh. "C"), the contractual term relied upon by the Petitioners (Exh. "D" at Article VI, Section 4) states specifically that Respondent is estopped from terminating grievants for any reason other than for "good cause."  "Just cause" is not mentioned anywhere in the contract.

"Just cause" has an entirely different standard and meaning from "good cause" under New York law.  "An employer's determination of good cause justifying termination of an employment contract is entitled to deference" (*Treiger v. Montefiore Medical Center*, 15 A.D.3d 175 [1[st] Dept 2005], citing *Golden v. Worldviosion Enters.*, 133 A.D.2d 50, 51 [1987], *lv denied* 71 N.Y.2d 804 [1988]; *Speiden v. Innis, Speiden & Co., Inc.*, 216 App. Div. 408 [1926]). Respectfully, this is reasonably interpreted to mean that Respondent, as the employer, has a less strict standard under "good cause" upon which to base termination of a union employee than for "just cause".  As asserted by Respondent, his cause for dismissal was either disruption at the work site on the first day of work, refusal by the grievants to do any work, or a determination that he had retained more carpenters than needed.

The phrase 'good cause' has no fixed or precise meaning.  It is usually decided on a case by case basis.  However, The Arbitrator's application was far more strict given the basis for termination asserted by Petitioners.

ii.  *The meaning of "good cause" was
clearly defined in the contract,
and did not limit Respondent's right to
terminate for any cause short of discrimination.*

New York State law required the Arbitrator to dismiss the proceedings upon Respondent's application because the contract clause sought to be enforced by the Petitioner was ambiguous at best, and could not applicable to the circumstances of the termination of the grievants based upon the terms of the contract.

As argued to the Arbitrator during proceedings, and as presented in Respondent's objections (Exh. "C"), the meaning of "good cause" was limitedly defined by Article VI of the union contract.  Specifically, Article VI, entitled "Non-Discrimination Clause – Job Referral System" states that an employer may not engage in "discrimination in the employment, hiring or training of employees in the bargaining unit on the basis of race, creed, color, sex, national origin, age, disability, marital status, citizenship status, sexual orientation or affectional preference" (Exh. "D", pg 16-17).  These words are presented directly under the Article heading, before any defining sections thereunder are recited.  Continuing under the same Article, section 4, the only part of the contract which address termination for any cause ("good cause" as it is stated under the contract, "just cause" as Petitioner calls it), it states that "the [Respondent] shall retain the right to discharge any Carpenter referred by the Union for good cause reasons."  The language of Article VI does not provide that the meaning of section 4 is expanded beyond the Article under which it is found, and no other clause in the contract expands the meaning of section 4 to apply to any other form of termination.

Under New York law, the court is required to discern the intent of the parties to the extent their intent is evidenced by their written agreement. (*Slatt v. Slatt*, 64 N.Y.2d 966, 967, 477 N.E.2d 1099, 1100, 488 N.Y.S.2d 645, 646 [1985]).  Where the parties' intent is "clearly and

unambiguously set forth [in the contract], effect must be given to the intent as indicated by the language used." Id. (citations omitted).  Unfortunately, the term "good cause" lacked any specific and unambiguous definition in the subject contract (Exh. "C"), so the meaning between the parties cannot be readily discerned.  As such, the meaning must then be determined based upon the location of the term in the contract, or determined as a matter of law as to whether it is a valid term at all.

In this circumstance, the location and use of the term can possibly establish the meaning of "good cause".  Pursuant to state law, since the "good cause" term is contained under Article VI and its heading, absent any language or other clause, section or term in the same agreement which would expand its application beyond the Article under which it is found, the "good cause" term can only be defined by the title and other terms provided under the same heading.  "[A] title or heading [] clarify[ies] or point[s] the meaning of an imprecise or dubious provision".  (*People v. Tempur-Pedic Intl., Inc.*, 30 Misc.3d 986 [2011]).  New York law also prohibits the expansion of the interpretation of a contractual term beyond the limits of its definition within the section it is found, absent any language within the contract permitting such expansion.  (*Frame v. Maynard*, 2011 NY Slip Op 03335, 922 N.Y.S.2d 48 [1st Dept 4-28-2011]).  The definition of the Article and section under which the clause used by Petitioners is found provides that a "good cause" violation is limited to matters involving discriminatory conduct.  The terms and heading of Article VI do not indicate any other limitation on the circumstances of a termination of an employee, and the Petitioners failed to establish a foundation under the four corners of the contract that "good cause" was defined or expanded by any other term of the contract, or law of the state of New York, to include the basis for the grievants' claims.

Given the foregoing, the Arbitrator should have dismissed the proceedings on

Respondent's motion given that New York law prohibited the application of Article VI, section 4, in the manner used by the Petitioners.  As such, the Arbitrator's denial of the motion to dismiss amounts to a manifest disregard for New York State's law.  Therefore, respectfully, this Court must vacate the arbitration awards.

## II.   THE ARBITRATOR REFUSED TO HEAR AND IGNORED EVIDENCE PERTINENT AND MATERIAL TO THE CONTROVERSY

"Vacatur [of an arbitration award] is [] permitted where the arbitrator's exclusion of evidence prejudices one of the parties."  (*Rai v. Barclays Capital Inc.*, 739 F. Supp. 2d 364, 372 [S.D.N.Y. 2010]).  Pursuant to 9 U.S.C. §10(a)(3), an arbitration award will be vacated "where the arbitrator is guilty of misconduct…in refusing to hear evidence pertinent and material to the controversy;  or of any other misbehavior by which the rights of any party have been prejudiced."  Furthermore, "[s]ection 10(a)(3) of the FAA also permits vacatur where the arbitrators were guilty of misconduct… in refusing to hear evidence pertinent and material to the controversy."  (*Rai*, *supra* at 371).

The Arbitrator in this case "is guilty of misconduct" and "misbehavior" because he refused to hear testimony pertinent and material to the controversy based upon evidence discovered as a result of Grievant Wycliffe Frederick's direct testimony.  During proceedings, Frederick made representations which were not previously stated in his written Grievance.  This testimony, elicited by his own attorney on direct examination, introduced new information not previously available to Respondent.

Specifically, as represented by Respondent counsel, testimony was taken by Petitioners' attorney on direct concerning the circumstances under which termination occurred (Atty. Aff. ¶4-8).  Said testimony represented information that was not part of the grievant Wycliffe Frederick's

grievance petition (Atty. Aff. ¶4-5).

The specifics of Frederick's grievance represents that he received "a paycheck [for the day he worked] and was informed that [he] was laid-off" (Frederick Grievance, Exh. "B").  He continues to claim that when he inquired as to why he had been laid-off, he "was presented with much hostility and abusive language", "was accused of inappropriately speaking to a[n unidentified] supervisor" and "that [he] talked too much about safety" (*Id.*).  However, during direct testimony, Frederick became more specific as to the type of check her received.  He stated that the received a greed, handwritten check for his day's payment.  On cross examination, Respondent's counsel inquired as to the check, confirming its color and form, and asking what he did with the check (Atty. Aff. ¶6).  Frederick's reply was to confirm his earlier testimony and to further represent that he cashed the check (*Id.*).  Thereafter, Respondent's counsel demanded that Frederick produce a photocopy of the cashed check to prove his testimony regarding the form of the check and that he cashed it with his bank (*Id.*).  The Arbitrator represented to counsel, on behalf of Frederick, that the check could no longer be in his possession given that he cashed it, and that Respondent should produce the check (*Id.*).  However, Respondent's counsel asserted that all banks maintain a photocopy of all checks cashed, and that such a check should be produced by Frederick to substantiate his testimony given under oath (*Id.*).  The Arbitrator reserved decision on the motion (*Id.*).  On redirect, Frederick was asked if he had cashed the check with a check-cashing storefront – a leading inquiry objected to by Respondent's attorney, but overruled by the Arbitrator (Atty. Aff. ¶7).  In response, Frederick confirmed that he had done as his attorney described to him (*Id.*).

It was this testimony, presenting brand new information, which prompted the Respondent to conduct an investigation that resulted in new evidence.  Such investigation produced the check

described by Frederick (Exh. "E").  A review of the check shows that Frederick's testimony was false regarding the check he received, and what he did with it thereafter.  First, the check in question is not green nor is it handwritten.  It is a standard check used by business, preprinted with the signature of endorsement being the only handwritten part of the check – not even the amount being paid is in writing.  Further, a review of the rear of the check reveals that Frederick did not, in fact, cash this check with a local check-cashing storefront.  Rather, it indicates that Frederick endorsed the check over to a third party, a person named Greta Salsbury (*Id.*).  Based upon this new information, Respondent investigated the identity of Greta Salsbury.  Using Frederick's home address, as presented the check (*Id.*), Respondent investigated further and discovered documentation from the NYC Department of Finance, Office of the City Register, which indicated that Greta Salsbury was the title owner of Frederick's home address (Exh. "F").  Based upon this, Respondent reasonably determined that Frederick had used the check to pay his rent – which is entirely different than what Frederick testified to based upon his counsel's leading question.

Respondent attempted to recall Frederick to examine him on this new evidence which addressed directly the new information he revealed under direct testimony, however, although he accepted this evidence into the arbitration record, the Arbitrator refused to permit Respondent to conduct his examination.  Parroting Petitioner's counsel, he asserted that Respondent did not have the right to recall Frederick to examine him further on this new evidence, and further asserted that such evidence should have been produced during an earlier discovery.  However, as the rules of evidence are more relaxed in an arbitration proceeding, and since there is no discovery process that includes pre-trial depositions as a means to illicit testimony which may lead to more discovered evidence, if new information is elicited during a party's direct testimony

which would direct an investigation into that party's claims and alleged facts, the opposing party must be given an opportunity to present such new evidence and examine the party to whom it applies.  Moreover, "where [] evidence sought to be introduced is relevant to some issue in the case other than credibility or if independently admissible to impeach the witness", a cross-examiner may produce and offer evidence that contradicts a party's testimony (*People v. Schwartzman*, 24 N.Y.2d 241, 245, 247 N.E.2d 642, 644-45 [1969])(Respondent is only estopped from questioning Petitioners on the new evidence if the intent was to "contradict [the] witness' answers concerning collateral matters… the sole purpose of impeaching credibility."). The evidence presented by Respondent was entirely relevant to the issues in this proceeding, addressing the facts asserted both in Frederick's direct testimony as well as in his grievance. Moreover, given that this new evidence challenged his direct testimony, it was also independently admissible to impeach the assertions he made on direct examination.

The evidence proffered by Respondent revealed some of Frederick's testimony to be false, and therefore called into question his entire testimony, as well as the grievance claim itself. By refusing to refusing to hear evidence pertinent and material to the controversy" (9 USC §10(a)(3)) based on new evidence discovered as a direct result of Frederick's own direct testimony, the Arbitrator "[prejudiced] the rights of [Respondent]."(*Rai*, *supra* at 371).  As such, according to the Second Circuit, "where fundamental fairness is violated, arbitration determinations will [] be opened up to evidentiary review."  (*Id.*, at 372).  As such, respectfully, this Court should consider this evidence directly refuting Frederick's testimony and find his representations to be equivocal and untrustworthy, necessitating an order vacating the arbitration award.

III.   **ARBITRATOR ERRED IN CONSIDERING INCONSISTENT TESTIMONY.**

The circumstances under which the Grievance were made involved two companies, a construction group known as Glenman, which was the primary contractor on the subject project, and Respondent Dufour Group, which was only a subcontractor hired by Glenman.

Petitioner presented two grievances for arbitration, one from a Carlos Peralta, and the other from a Wycliffe Frederick (Exh. "B").  During direct testimony from both parties, they discussed with more detail the circumstances of their termination from employment.  The testimony given did not coincide with the grievance claims that they filed.

With regard to Grievant Peralta, he states in his grievance that he had complained of the safety conditions in parts of the construction site where he was asked to perform his duties, and that he made requests to cure such conditions.  He represented in the Grievance that he was told by a "Jack" (identified by Peralta as a supervisor from Glenman – the primary contractor), "Tom" (a supervisor for Respondent – who was a subcontractor) and Ollie (a party who did not work for Respondent), that he would be fired if he did not return to work (Exh. "B").  However, in his direct testimony, Peralta contradicted his Grievance claim and represented that the person who asserted the above described ultimatum was only "Jack", who Peralta acknowledged in both his Grievance and testimony as a Glenman representative, unaffiliated with Respondent (Atty. Aff. ¶8).  This was further confirmed in cross examination (*Id.*), which contradicts what was presented in Peralta's Grievance.  Such contradiction should have been considered by the Arbitrator when weighing the veracity of Peralta's testimony and the Grievance, leading only to the conclusion that the claim lacked credibility.  However, as the Arbitrator represented in his award, it had already concluded that unrelated conditions at the construction site (factually concluded by this Arbitrator in a previous arbitration proceeding on a similar claim) established a

basis for finding bad faith termination on a contract that is otherwise at-will in nature (Exh. "A" at 4). Furthermore, given that the Glenman representative identified by Peralta's testimony was the non-party who threatened termination under the circumstances described by Peralta, there was no basis for the Arbitrator to conclude that the reason for Peralta's termination stemmed from any complaints regarding the safety of the job site (which, under the terms of the contract, would not be sufficient basis for termination given the at-will status of the contract).

With regard to Grievant Frederick's Grievance, Frederick's testimony contradicted completely the claim made in his Grievance. Specifically, Frederick states in his Grievance that he was told that his termination resulted in hostility directed at him where he was accused of inappropriately speaking to a supervisor and talking too much about safety (Exh. "B"). However, on direct and cross testimony, Frederick identified the Glenman representative, "Jack", as the non-party who presented any hostility or threats (Atty. Aff. ¶4). In fact, Frederick testified that the Respondent representative, Tom, made no hostile or threatening statements to him that he could hear.

With regard to Frederick's assertion that he was told that his termination was due to his "talk[ing] too much about safety" (stated in his Grievance, Exh. "B", and in his direct testimony), Frederick testified that this statement was made to him at the time he received from Tom the "handwritten, green check". Given that there was evidence accepted by the Arbitrator which contradicted the representation of a material fact, the entirety of the circumstances were suspect, and the assertion should have been held to skepticism by the Arbitrator.

Overall, the testimonies given by both parties contradicted the basis upon which the grievances were made. As such, the Arbitrator improperly considered both the claims and the testimonies on face value.

12

**IV.        PARTIALITY WAS EVIDENT IN THE ARBITRATOR'S CONDUCT**

Pursuant to the 9 U.S.C § 10(2), an additional ground for vacatur of an arbitral award is where there was evident partiality or corruption in the arbitrator. Additionally, Article 75 of the New York CPLR lists as a ground for vacatur due to partiality of an arbitrator appointed as a neutral. See N.Y. C.P.L.R. § 7511(b)(1)(ii).

In the present case, during direct examination of the witness Frederick, counsel for the Petitioner Union asked questions which gave the witness the answer sought. In one example, Frederick stated during cross examination that there was an instance during which he had communicated with the Respondent's representative, "Tom", regarding safety, and that this "Tom" responded with an inaudible utterance (Atty. Aff. ¶5-7). When redirected about this utterance, Grievant's counsel inquired as to the physical actions of "Tom", pantomiming "Tom's" alleged actions (Atty. Aff. ¶7). Such effort clearly led the witness to the answer sought, rather than permitting the witness to provide the facts himself. As another example, after Respondent's counsel made demand for a photocopy of the check from Frederick's bank to substantiate his testimony, Grievant's counsel, on redirect, asked specifically if Frederick cashed the check at a local check-cashing storefront – Frederick, of course, confirmed (Atty. Aff. ¶7). This question was leading in every way, eliciting the testimony necessary to substantiate the false testimony Frederick gave. Despite objection from Respondent's counsel, the Arbitrator permitted such questioning to continue, permitting the tainted testimony to become part of the record for consideration.

The Arbitrator also made predetermined and capricious rulings regarding motions and objections made by the employer, and acted in a sarcastic fashion to counsel regarding the

employer's motions.  The Arbitrator usually made split-second decisions to deny motions made

by Respondent's counsel, requiring counsel to often solicit and urge the Arbitrator's permission,

more than once, to present a basis for its motion.  In one instance, upon employer's first

presenting a motion to dismiss based upon the contract terms (*Infra* Section I), the Arbitrator,

without thought or inquiry as to the basis of the motion, and with a punctuated dismissive

attitude directed at counsel for the employer, denied the motion as soon as the words spoken had

left counsel's mouth (Atty. Aff. ¶12).  Upon urging that he hear the basis for the motion, the

Arbitrator received Respondent's arguments and, condescending manner, asked of Respondent's

counsel "Are you finished?"  (Atty. Aff. ¶12).  Upon confirmation that counsel completed his

arguments, the Arbitrator hurriedly, and in a perfunctory manner, turned to Petitioner's counsel,

as if to create the "appearance" of a "fair" exchange of argument (Atty. Aff. ¶12).  Upon

conclusion of the Petitioner's argument, the Arbitrator confirmed "Are *you* done?", and

immediately denied the motion, without thought, compunction, consideration or an indication of

fairness as to the application of New York State law as it was presented (Atty. Aff. ¶12).

There was also an instance during the proceedings involving one of the witnesses for the

Petitioners.  After his testimony had completed, the witness (who was a grievant in the previous

arbitration to which the Arbitrator refers in his awards) was excused (Atty. Aff. ¶11).  However,

the witness requested t make an additional statement (*Id.*).  When Respondent's counsel

protested any further statement from the witness, the Arbitrator took no action to stop the witness

from speaking and making accusations about the Respondent (*Id.*).  After hearing the words of

the witness, at a time when the proceedings were on hold while the Petitioner's counsel was

determining if he had any further witnesses to present, the Arbitrator inquired of counsel as to

whether the witness' statement regarding the accusation was true (*Id.*).  Respondent's counsel

protested such inquiry and that the Arbitrator permitted any such utterance to take place at all. The Arbitrator's response was to chastise counsel, instructing him "you don't tell me how to do my job" and "don't communicate with me while counsel isn't in the room" (*Id.*).

Finally, upon conclusion of the proceedings, Respondent represented that he had several objections to make.  However, the Arbitrator would not permit Respondent to make them orally, and instructed that they be submitted in writing (Atty. Aff. ¶13).

## CONCLUSION

An order vacating the arbitration award is necessary.  First, the Petitioner failed to present one iota of evidence or testimony to establish that the Respondent was not within his rights to terminate the grievants for any reason other than based on discriminatory practices.  The four corners of the contract clearly establish that employment is at-will – there is no term of employment, and there are no terms which specify when Respondent can or cannot terminate a union employee except if it is based on discrimination.  As such, the Respondent was permitted terminate Petitioners for any reason, even those alleged by Petitioners.  Moreover, the basis for Petitioner's claims are founded on terminology found nowhere in the contract.  Petitioner's wrongly assert that dismissal can only be for "just cause", though such terminology is found nowhere in the contract, nor is such terminology defined.  However, though the Arbitrator attempts to "re-jigger" Petitioner's claims in his award by finding that there was no "good cause" for termination, such a finding falls outside the definition of the meaning of this terminology as it has been defined in the contract.  As such, on the contract alone, the Petitioner lacks foundation for the claims made.

Respectfully, it is further  necessary that this Court vacate the arbitration award as the

Arbitrator exhibited a manifest disregard for New York State law and fundamental fairness.  As described in the annexed affirmation, the Arbitrator's entire attitude throughout the proceedings was capricious and dismissive of Respondent's attempt to address the claims of the Petitioners.

Finally, as a matter of law, the award should be vacated because the Petitioners failed to present consistent and reliable testimony which established that Respondent was guilty of any wrong-doing.  Testimony taken on both direct and cross examination established that a Glenman representative, and not Respondent, was the source of all hostility and threats, and, further, such testimony contradicted the claims made in the parties' filed Grievances.  Moreover, evidence elicited from Petitioner's own direct testimony contradicted the facts alleged, challenging the veracity of the entire claim.  Even testimony represented by Fredrick contradicted testimony presented in the previous arbitration, calling into question the veracity of that claim as well (Atty. Aff. *fn*. 1).

Given the foregoing, the Respondent respectfully requests that the Court deny the Petitioner's application to enforce the arbitration award and instead vacate it.


Dated: New York, New York
       February 14, 2012

                                        Respectfully submitted,

                                        **Law Offices of Joseph J. Mainiero**


                                        _____
                                        Joseph J. Mainiero, Esq.
                                        Law Offices of Joseph J. Mainiero
                                        *Attorney for Respondent*
                                        305 Broadway, Ste. 402
                                        New York, NY 10007
                                        212.267.6611
                                        joe@jjmlegal.com


16

Index. No: **12 Civ 00173 (AJN)**         Year:                    Hon.:
Docket No.:
File No.:                              CSMS:

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN THE MATTTER OF THE APPLICATION OF

## NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,

*Petitioner,*

*-against-*

## DUFOUR GROUP INC.,

*Respondent.*

## RESPONDENTS MEMORANDUM OF LAW IN OPPOSITION OF PETITION TO CONFIRM ARBITRATION AWARD

### NOTICE OF ENTRY

Sir: PLEASE TAKE NOTICE that the within is a true certified copy of a

duly entered in the office of the clerk of the within named court on:

Dated:

       Yours, etc.
       **Law Offices of Joseph J. Mainiero**

### NOTICE OF ENTRY

Sir: PLEASE TAKE NOTICE that

of which the within is a true copy will be presented for settlement to Hon.
on of the judges of the within named Court at:

on the     day of          , 20   , at          am    pm.

Dated:

       Yours, etc.
       **Law Offices of Joseph J. Mainiero**

*Service of a copy of the within is hereby admitted.*

………………………………………………………

*Attorney for Petitioner*

Compliance pursuant to 22 NYCRR §130-1.1a

To the best of the undersigned's knowledge, information and belief formed after an inquiry reasonable under the circumstances, the within document(s) and contentions contained herein are not frivolous as defined in 22 NYCRR §130-1.1a.

By: _____
Antony  Hilton, Esq.
Joseph J. Mainiero, Esq.
Law Offices of Joseph J. Mainiero
*Attorneys for Respondent*
305 Broadway, Ste. 402
New York, NY 10007

TO:

Brian Quinn, Esq.
DeCarlo Connor Shanley PC
101 Constitution Avenue N.W. 10th FL
Washington,  D.C. 20001