USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 1 9 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
NEW YORK CITY DISTRICT COUNCIL OF                                  :
CARPENTERS,                                                        :
                                    Plaintiff,                     :          12 Civ. 00173  (AJN)
                                                                   :
                        -v-                                        :          OPINION
                                                                   :
                                                                   :
DUFOUR GROUP INC.,                                                 :
                                    Defendant.                     :
                                                                   :
-------------------------------------------------------------------X

ALISON J. NATHAN, District Judge:

The New York City District Council of Carpenters has filed a petition to confirm two

related arbitration awards arising out of the discharge of two individuals in violation of a

collective bargaining agreement.  Dufour Group Inc. ("Dufour Group") opposes the petition and

seeks vacatur of the arbitration awards.  For the reasons set forth below, the petition to confirm is

granted.

## I.  FACTS AND PROCEDURAL HISTORY

On August 1, 2008, Dufour Group entered into a collective bargaining agreement with

the District Council for New York City and Vicinity, United Brotherhood of Carpenters and

Joiners of America, AFL-CIO (the "Union").  (Complaint ¶ 1; Quinn Decl. Ex. 1; Opp. at 1.)

Under the agreement, Dufour Group employed several members of the Union for a construction

job.  (Opp. at 1.)

Grievances were filed against Dufour Group on behalf of two union employees, Wycliffe

Frederick and Carlos N. Peralta.  (Hilton Decl. Ex. B.)  Frederick's grievance alleged that he

approached the shop steward, super, and foreman of the jobsite with safety concerns. (Hilton Decl. Ex. B.) As a result, the grievance alleges, at the end of the day Fredrick was "given a paycheck and was informed that [he] was laid-off." (Hilton Decl. Ex. B.) When he sought the reasons for his termination, he was "presented with much hostility and abusive language" and "was accused of inappropriately speaking to a superior." (Hilton Decl. Ex. B.) Peralta's grievance contains similar allegations. (Hilton Decl. Ex. B.) These terminations occurred on the first day of the grievants' jobs. (Opp. at 1; Quinn Decl. Ex. 2.)

An arbitration was held on July 13, 2011, presenting the issue of "[w]hether [Dufour Group] had good cause to terminate the grievants Wycliffe Frederick and Carlos Peralta on 8/5/08? And if not, what shall be the remedy?" (Complaint ¶¶ 8-9; Quinn Decl. Ex. 2 at 2-3; Quinn Reply Ex. 2.) Before the arbitrator rendered a decision, Dufour Group moved to dismiss, arguing that (1) Frederick and Peralta failed to properly assert their rights under the agreement and that (2) the collective bargaining agreement allowed Dufour Group to terminate Frederick and Peralta for any reason. (Hilton Decl. ¶ 12; Opp. at 3; Hilton Ex. C at ¶¶ 4-7.) The arbitrator denied this motion. (Hilton Decl. ¶ 12.)

The arbitrator issued an award to the grievants on October 11, 2011, finding that the facts surrounding the arbitration were essentially the same as those of a previous arbitration regarding the termination of another worker at the site, Robert Makowski. (Quinn Decl. Ex. 2 at 2, 4.) At the Makowski arbitration, the arbitrator concluded that "the termination of three out of eight journeyman carpenters for their unproductivity on their first day of the job strains credulity" and that it was the employer's lack of preparation that led to any productivity issues. (Quinn Decl. Ex. 2 at 4.) The arbitrator noted that, despite being aware of the prior arbitration, counsel for Dufour Group did not present any new evidence or credible testimony to distinguish Frederick

2

and Peralta's termination from that of Makowski.  (Quinn Decl. Ex. 2 at 4-7.)  Consistent with

these determinations, the arbitrator found no good cause to terminate the grievants and awarded

lost earnings for the relevant period.  (Quinn Decl. Ex. 2 at 6-7.)  In a subsequent award, the

arbitrator further awarded the grievants compensation for wages lost due to Dufour Group's

rescheduling of the hearing on late notice.  (Quinn Decl. Ex.  3.)

## II.  STANDARD OF REVIEW

"Confirmation of an arbitration award is a summary proceeding that merely makes what

is already a final arbitration award a judgment of the court, and the court must grant the award

unless the award is vacated, modified, or corrected."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d

95, 110 (2d Cir. 2006) (quotation marks and citations omitted).  "The arbitrator's rationale for an

award need not be explained," and "[o]nly a barely colorable justification for the outcome

reached by the arbitrators is necessary to confirm the award."  *Id.* (quotation marks and citations

omitted).  "A party moving to vacate an arbitration award has the burden of proof, and the

showing required to avoid confirmation is very high."  *Id.*

The Federal Arbitration Act provides a limited number of grounds for vacating an

arbitration award including, as relevant here, that the arbitrator exhibited "evident partiality" or

was "guilty of misconduct in . . . refusing to hear evidence pertinent and material to the

controversy."  9 U.S.C. § 10(a).  An arbitration award will also be vacated if it was made in

"manifest disregard of the law."  *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d

329, 339 (2d Cir. 2010).  Manifest disregard of the law is found only in "those exceedingly rare

instances where some egregious impropriety on the part of the arbitrator [ ] is apparent."  *Id.*

(quotation marks omitted).  To prove manifest disregard of the law, a party must show that (1)

the law that was manifestly disregarded was clear and explicitly applicable to the matter before

3

the arbitrator; (2) that the law was improperly applied, leading to an erroneous outcome; and (3) that the arbitrator "knew of the existence of the law and its applicability to the problem before him." *Id.*

## III. DISCUSSION

### A.  The Arbitrator Did Not Demonstrate Manifest Disregard of the Law

#### 1.   Proper Interpretation of the Contract

Dufour Group argues that the arbitration award shows manifest disregard for the law because the arbitrator improperly construed the contract.  Under the arbitrator's interpretation of the agreement, Dufour Group was allowed to terminate the grievants only for good cause.  (*See, e.g.*, Quinn Decl. Ex. 2 at 1, 5.)

Article VI of the agreement provided, under the heading "Non-Discrimination Clause[;] Job Referral System"[1] that

> [t]he parties agree that there shall be no discrimination in the employment, hiring, or training of employees in the bargaining unit on the basis of race, creed, color, sex, national origin, age, disability, marital status, citizenship status, sexual orientation or affectational preference in all employment decisions, or Union activity . . . .

(Quinn Decl. Ex. 1 at 16-17.)  Several pages later, Section 4 of Article VI provides that "[t]he Employer shall retain the right to discharge any Carpenter referred by the Union for good cause reasons.  If the Employer rejects the Carpenter, the Employer shall notify the Union in writing [of] the reasons for rejection."  (Quinn Decl. Ex. 1 at 20.)  Dufour Group contends that, in light of these provisions, the arbitrator's interpretation of the contract was erroneous and that Dufour Group had the right to terminate the grievants for any reason not barred by the agreement's non-discrimination clause.  (Opp. at 5-6.)  This argument provides no basis to vacate the award.

---

[1] A line break appears between "Non-Discrimination Clause" and "Job Referral System" in the agreement.

Absent fraud, dishonesty, or other egregious misconduct, a district court reviewing an arbitration award is not permitted to second guess an arbitrator's interpretation of a contract if the arbitrator is even arguably construing the terms of the contract. *See Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1767-68 (2010); *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011); *T.Co Metals, LLC*, 592 F.3d at 339 ("With respect to contract interpretation, [the manifest disregard of the law] standard essentially bars review of whether an arbitrator misconstrued a contract.")  Dufour Group's argument for manifest disregard of the law is to simply offer its own interpretation of the collective bargaining agreement that is contrary to the arbitrator's interpretation.  This is not sufficient.

In addition, the arbitrator had well more than a "barely colorable" justification for his interpretation of the contract.  The contract provides that the employer retains the right to discharge a carpenter for "good cause reasons," and requires that if the employer rejects a carpenter, the employer "shall notify the Union in writing the reasons for rejection."  (Quinn Decl. Ex. 1 at 20.)   The heading to Article VI refers not only to the non-discrimination clause but also to the "Job Referral System," suggesting that Article VI covers two topics.  (Quinn Decl. Ex. 1 at 16.)  The "good cause" provision is discussed in the portion of Article VI relating to the job referral system and is not linked to the non-discrimination clause.  Thus, the arbitrator's conclusion that Dufour Group was only permitted to terminate the grievants for "good cause" does not show "manifest disregard of the law."

### 2.   "Just Cause" and "Good Cause"

Dufour Group also claims that "Petitioner failed to properly assert the rights under the contract."  (Opp. at 3, 4; *see also* Hilton Ex. C at ¶ 4.)  Although the argument could be more clearly articulated, it appears that Dufour Group contends that under New York law there is a

distinction between having "good cause" versus "just cause" for a termination, and that because Frederick's grievance uses the words "unjust layoff," the arbitrator must have applied the "just cause" standard.  (Opp. at 3, 4; *see also* Hilton Ex. C at ¶ 4.)  Dufour Group fails to establish at least the first and second elements of manifest disregard for the law.

First, the Court has found no authority supporting the claimed distinction between "good cause" and "just cause" for a termination.  Dufour Group relies exclusively on the proposition that New York courts will defer to an employer's determination of "good cause" to terminate an employee.  (Opp. at 4.)  However, Dufour Group fails to provide any basis to conclude that courts are not similarly deferential regarding termination for "just cause."  Indeed, *Trieger v. Montefiore Med. Ctr.*, 789 N.Y.S.2d 42, 43 (App. Div. 2005), a case Dufour Group relies on, uses the terms "just cause" and "good cause" interchangeably.  An independent review of New York law has similarly not suggested any merit to this argument.

Second, even assuming there is some distinction between "good cause" and "just cause" under New York law, Dufour Group has failed to show that the arbitrator applied the law incorrectly.  The question presented to the arbitrator was whether there was "good cause" for the termination, and the arbitrator's finding was that there was not "good cause" for the termination. (Quinn Decl. Ex. 2 at 2, 5.)  Nowhere does the arbitrator indicate that he was applying a less deferential "just cause" standard.

### B.  The Arbitrator Did Not Commit Misconduct by Refusing to Hear Evidence

Dufour Group was not allowed to cross-examine Frederick regarding a contradiction between his testimony that he received a "gree[n], handwritten check" which he then cashed, and evidence that the check was not green or handwritten, and was endorsed to Frederick's landlady rather than cashed.  (Opp. at 8-9.)  Dufour Group argues this amounted to a failure to hear

6

material evidence, and that this evidence "revealed some of Frederick's testimony to be false," calling into question his entire testimony and the grievance itself.[2]

Vacatur under § 10(a)(3) for failure to hear material evidence requires a showing that the proceedings were fundamentally unfair. *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997); *Rai v. Barclays Capital, Inc.*, 739 F. Supp. 2d 364, 371-72 (S.D.N.Y. 2010). Arbitrators have discretion to make evidentiary determinations and need not hear all the evidence proffered by a party. *See Tempo Shain Corp.*, 120 F.3d at 20; *Rai*, 739 F. Supp. 2d at 371-72.

The arbitrator did not deprive Dufour Group of a fundamentally fair proceeding by refusing to allow them to recall Fredrick to cross-examine him regarding the check. The arbitrator accepted the check into the record and thus received evidence of the claimed inconsistencies. Moreover, any inconsistency regarding what Frederick did with the check is a collateral matter, unrelated to the interpretation of the agreement or the reasons for Frederick's termination. *See Rai*, 739 F. Supp. 2d at 375; *Interdigital Communs. Corp. v. Samsung Elecs. Co.*, 528 F. Supp. 2d 340, 351 (S.D.N.Y. 2007).

### C.  There Is No Basis to Vacate the Award Due To "Inconsistent Testimony"

Dufour Group's argument that the award should be vacated because the arbitrator "erred in considering inconsistent testimony" boils down to a claim that the arbitrator did not consider contradictions between the grievances and Peralta and Frederick's testimony.  (Opp. at 11.)  The Court has not been provided with a transcript of the proceedings before the arbitrator, but even taken at face value Dufour Group's arguments are merely objections to the evidentiary basis for the arbitrator's decision and attacks on the grievants' credibility.

---

[2] Dufour Group also suggests the Court should directly overrule the arbitrator's credibility determination because of this evidence and vacate the award.  (Opp. at 10.)  There is no basis for this argument, as discussed below, because it is not the Court's place to reassess the evidence before the arbitrator.

"[T]he Second Circuit does not recognize manifest disregard of the evidence as a proper ground for vacating an arbitrator's award." *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004). "To the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so only for the purpose of discerning whether a colorable basis exists for the . . . award so as to assure that the award cannot be said to be the result of . . . manifest disregard for the law." *Id.* Even if an award is contrary to strong evidence favoring the party bringing the motion to vacate, the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. *Id.*; *see also McQueen-Starling v. UnitedHealth Group, Inc*., 654 F. Supp. 2d 154, 166-67 (S.D.N.Y. 2009); *Fairchild Corp. v. Alcoa*, *Inc.*, 510 F. Supp. 2d 280, 289-90 (S.D.N.Y. 2007).

The arbitrator's award explains that "[o]n sufficient and credible evidence of the case as a whole, . . . Dufour Group did not establish it had good cause for the termination of the grievants." (Quinn Decl. Ex. 2 at 5.)  In particular, the arbitrator noted that the Union "presented each grievant's testimony as well as that of Makowski," that Dufour Group presented no new evidence of good cause and did not distinguish the case from the findings of the earlier arbitration, and that there was no evidence to establish good cause.  (Quinn Decl. Ex. 2 at 4-5.) The arbitrator having provided a colorable justification for the award, Dufour Group's arguments that the arbitrator should have discredited the grievants' testimony do not provide a basis to vacate the award. *See Saint Mary Home, Inc. v. SEIU, Dist. 1199*, 116 F.3d 41, 44-45 (2d Cir. 1997) ("Since the arbitrator explained his conclusions in terms that offer a colorable justification for the outcome reached, our inquiry is at an end." (quotation marks and internal citation omitted)).

**D.  There Is No Basis to Vacate the Award Due To Evident Partiality**

Finally, Dufour Group claims the arbitrator demonstrated evident partiality by

(1) allowing counsel for the Union to ask leading questions of Frederick;

(2) making a split-second decision to deny Dufour Group's motion to dismiss, requiring DuFour group to solicit the arbitrator's permission to state the basis for its motion;

(3) being sarcastic to counsel for Dufour Group;

(4) failing to stop a witness, Makowski, from making an additional statement after he finished testifying, asking counsel for Dufour Group if the statement was true, and chastising Dufour Group's counsel when Dufour Group objected to the statement and arbitrator's inquiry; and

(5) requiring Dufour Group's objections at the close of the proceedings to be made in writing rather than orally.

(Opp. at 13-15; Hilton Decl. ¶¶ 3, 7, 11-13.)  Although Dufour Group points to no improper relationship or underlying bias, a conclusion of partiality can be inferred from objective facts inconsistent with impartiality when a reasonable person, considering all the circumstances, would have to conclude the arbitrator was partial to one side.  *See Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012).

Dufour Group fails to explain how permitting leading questions suggests partiality.  *See Travel Wizard v. Clipper Cruise Lines*, No. 06-cv-2074, 2007 U.S. Dist. LEXIS 163, at *11-12 (S.D.N.Y. Jan. 3, 2007); *Moorning-Brown v. Bear, Stearns & Co.*, No. 99-cv-4130, 2004 U.S. Dist. LEXIS 26279, at *13-16 (S.D.N.Y. Dec. 30, 2004).  Similarly, Dufour Group makes no showing that the arbitrator's requirement that Dufour Group present its objections in written form was due to partiality or denied them a fair hearing.  *See, e.g.*, *Cole Publishing Co. v. John Wiley & Sons*, No. 93-cv-3641, 1994 U.S. Dist. LEXIS 13786, at *14-15 (S.D.N.Y. Sept. 27, 1994).  Particularly given the flexible nature of arbitration proceedings, Dufour Group's nitpicking on these points does not support vacatur.  *See Tempo Shain Corp*, 120 F.3d at 20.  The same holds true for the arbitrator's exchange with Makowski after he was excused.  *See id.*;

9

*Ruei-Chan v. Merrill Lynch Pierce*, *Fenner & Smith, Inc. (In re New York Stock Exch.)*, No. 04-cv-488, 2004 U.S. Dist. LEXIS 18594, at *29-32 (S.D.N.Y. Sept. 7, 2004).

The only specific motion identified by Dufour Group on which the arbitrator rendered a "split-second decision[]" is the motion to dismiss.  The arbitrator's treatment of this motion does not demonstrate evident partiality.  The arbitrator ultimately gave counsel a chance to present its motion and, as described above, the resolution of that motion was not in manifest disregard of the law.  A claim that the arbitrator was rude or abrasive, whether in this context or more generally, does not demonstrate evident partiality or fundamental unfairness.  *See Bajaj v. Air-India Airlines*, No. 90-cv-1122, 1991 U.S. Dist. LEXIS 9248, at *14-16 (S.D.N.Y. July 9, 1991); *see also Advest, Inc. v. Asseoff*, No. 92-cv-2269, 1993 U.S. Dist. LEXIS 4839, at *8 (S.D.N.Y. Apr. 12, 1993).

To the extent that the arbitrator's treatment of the motion to dismiss suggested an opinion on the proceedings disfavorable to Dufour Group, this opinion appears to be the result of the evidence and claims, particularly Dufour Group's failure to present evidence to distinguish this case from the Makowski arbitration.  *See Travel Wizard*, No. 06-cv-2074, 2007 U.S. Dist. LEXIS 163, at *10 ("The questions cited were all pertinent to the merits; to the extent they imply any opinion or view, there is nothing to suggest that such view was based on anything other than the merits of the case based on the arbitrator's analysis of the law and the evidence."); *Advest, Inc.*, No. 90-cv-1122, 1993 U.S. Dist. LEXIS 4839, at *8.  In his award, the arbitrator notes that Dufour Group was aware of the prior arbitration, and that the arbitrator "presumed counsel . . . intended to develop its own de novo case for the two grievants at issue here," but "while the Arbitrator awaited new evidence . . . none was presented by the Employer."  (Quinn Decl. Ex. 2

at 4.)  It is not surprising that the arbitrator, faced with this failure, might have acted quickly in denying the motion to dismiss.

## IV. CONCLUSION

The petition to confirm the arbitration awards is GRANTED.


SO ORDERED:


Dated:  April 1**9**, 2012
New York, New York

_____
ALISON J. NATHAN
United States District Judge